On court's request for information dated May 28, regarding appealability; taken en banc September 22, jurisdiction determined; appeal may proceed October 13, 2004

## Michael GARCIA,
*Appellant,*

*v.*

## OREGON DEPARTMENT OF MOTOR VEHICLES,
Chloe Ousterhout, Billie Brown, and Lorna Youngs,
*Respondents.*

0310007; A124357

99 P3d 316

Kent Hickam for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Richard D. Wasserman, Attorney-in-Charge, for respondents.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Brewer, Schuman, and Ortega, Judges.

LINDER, J.

Brewer, J., dissenting.

**LINDER, J.**

This appeal presents what promises to be the first of many questions that will arise for courts in the wake of the enactment of House Bill (HB) 2646 (2003), which comprehensively revised the statutes governing judgments.[1] Under HB 2646, many judgments are now designated "limited," "general," or "supplemental," and trial judges and local court administrators are required to include those designations in judgment labels and in register notations.[2] For the most part, the legislature appears not to have anticipated that the new statutory scheme would be implemented imperfectly—for example, that the labels on judgments might not reflect the new designations or might reflect them incorrectly and that register notations might be incomplete or wrong. Consequently, we are presented with the issue that arises in this case.

■ What happened here is undramatic. The trial judge, after resolving all of the claims in this case, signed and filed a judgment document labeled "general judgment." The judgment document also awarded $385 in costs to the prevailing party. After receiving it, the court administrator noted in the court register that a judgment document had been filed. In making that notation, however, the court administrator made a mistake. Rather than describe the judgment as a general judgment, the court administrator described it as a limited judgment.[3] The question under HB 2646 is the following:

---

[1] *See* Or Laws 2003, ch 576 (containing the complete text of HB 2646). HB 2646 became effective on January 1, 2004, and its provisions apply to the circumstances of this case. *See* ORS 171.022 ("Except as otherwise provided in the Act, an Act of the Legislative Assembly takes effect on January 1 of the year after passage of the Act."); *see also* Or Laws 2003, ch 576, § 45 (providing, in part, that, "[e]xcept as provided by this section or by sections 1 to 44 of this 2003 Act, sections 1 to 44 of this 2003 Act apply only to judgments entered on or after the effective date of this 2003 Act"); Or Laws 2003, ch 576, § 90a ("The amendments to ORS 19.205, 19.270, 19.275, 19.415 and 19.450 by sections 85 to 89 of this 2003 Act apply only to the appeal of judgments entered on or after the effective date of this 2003 Act.").

[2] We describe and cite the relevant provisions in greater detail later.

[3] More precisely, the trial court noted in the register, "Judgment Limited Creates Lien." The "creates lien" notation is consistent with ORS 18.150(1), which requires that notation to be made in the register when the judgment contains a money award. *See* ORS 18.005(14) (a money award is "a judgment or portion of a judgment that requires the payment of money").

Does that clerical error defeat our jurisdiction over the appeal?[4] The answer requires untangling the new statutory scheme governing judgments and attempting to discern the legislature's intent on a question that it did not address expressly.

■       The starting point, as for all questions that require us to determine legislative intent, is the text and context of the pertinent statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Context, in turn, includes "the preexisting common law and the statutory framework within which the law was enacted." *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998) (citation omitted). Because significant features of the preexisting statutory framework relating to judgments were retained in HB 2646, that framework provides an appropriate starting point.

Under the preexisting law, for a judgment to be enforceable and appealable, two basic requirements of form had to be satisfied: (1) the judgment decision had to be set forth in a written document, and (2) the written document had to be labeled a "judgment." *Former* ORCP 70 (2001), *repealed by* Or Laws 2003, ch 576, § 580 (ORCP 70 A provided that "[e]very judgment shall be in writing plainly titled as a judgment and set forth in a separate document."). An oral pronouncement of the court's decision, even if transcribed, was not an enforceable and appealable judgment because it was not reduced to a written document. *Kay v. David Douglas Sch. Dist. No. 40*, 303 Or 574, 579, 738 P2d 1389 (1987). Even when the judgment was memorialized in a written document, the written document was not an appealable

---

[4] Before the legislature enacted HB 2646, this court had decided *Patrick v. Otteman*, 158 Or App 175, 187, 974 P2d 217, *rev den*, 328 Or 594 (1999), in which we held that, where the trial court issued a judgment but the clerk entered it in the register as an order, no judgment had been entered. In light of our holding in *Patrick*, the new statutory provisions concerning the subcategories of judgments, and their entry and the court administrator's incorrect notation in this case, we raised, on our own motion, the issue whether the administrator had entered the judgment that the court rendered so that it could be appealed. *See* ORS 19.235(3) (providing that this court, on its own motion, may "make a summary determination of the appealability of the decision"). We asked the parties to address "whether the general judgment in this case is ineffective, and, therefore, not appealable, because the general judgment was not properly characterized in the case register." Plaintiff and defendants generally responded that the administrator's incorrect notation did not affect the appealability of the judgment.

and enforceable judgment if it was not plainly labeled a "judgment." *City of Portland v. Carriage Inn*, 296 Or 191, 194, 673 P2d 531 (1983) (judgment must be labeled "judgment" to be effective). Of significance here, as long as the document was labeled a "judgment," the "plainly labeled" requirement was satisfied, even if the label otherwise included information that was inaccurate or meaningless. *See Ensley v. Fitzwater*, 293 Or 158, 162 n 2, 645 P2d 1062 (1982) (because "judgment" and "order" are different things with separate meanings, label "judgment order" should not be used, but defect did not prevent appeal of judgment); *Haas v. Painter*, 62 Or App 719, 721 n 1, 662 P2d 768, *rev den*, 295 Or 297 (1983) (judgment labeled "judgment order," although meaningless, did not prevent judgment document from being appealable).

Preexisting law also imposed a procedural requirement for a judgment to be appealable and enforceable. Specifically, the judgment had to be entered in the register. *See former* ORCP 70 B(2) ("[A] judgment is effective only when entered in the register as provided in this rule.").[5] But what constituted "entry" was not spelled out in the statute. *Former* ORCP 70 B(1) stated only that, after a judgment was filed with the court administrator, "notation of the filing shall be entered in the register," leaving the substance of the notation unspecified. This court construed the statute, however, to require that the notation specifically identify the document filed as "a judgment" rather than as an order or other kind of document. *Patrick v. Otteman*, 158 Or App 175, 185-86, 974 P2d 217, *rev den*, 328 Or 594 (1999).

In enacting the 2003 statutory scheme governing judgments, the legislature retained those requirements,

---

[5] Since 1862, "entry" has been the key procedural event that renders a judgment appealable and triggers the time for filing an appeal. *See generally Henson and Henson*, 61 Or App 210, 214-15, 656 P2d 345 (1982) (discussing authorities). After enactment of the Oregon Rules of Civil Procedure (ORCP), however, confusion arose because of inconsistencies between those rules and other statutes as to whether entry consisted of a notation in the docket, the journal, or the register. *See Ryerse v. Haddock*, 337 Or 273, 280, 95 P3d 1120 (2004). A 1991 amendment eliminated the inconsistency, with the result that both the statutes and *former* ORCP 70 B(2) since have required judgments and other orders with the effect of judgments to be entered in the register to be effective and appealable. *Ryerse*, 337 Or at 280.

codifying them in terms that mirror the preexisting law closely, if not exactly. ORS 18.005(10) defines "judgment document" to mean "a writing in the form provided by ORS 18.038 that incorporates a court's judgment." ORS 18.038(1) expressly requires the written judgment document to have the word "judgment" in its title: "A judgment document must be plainly titled as a judgment." Under ORS 18.082(1)(b) and (c), "entry" remains the procedural event necessary for a judgment document to be enforceable and appealable. And, codifying this court's holding in *Patrick*, ORS 18.075(1) expressly identifies the substance of the notation necessary to enter a judgment in the register:

> "A judgment is entered in circuit court *when* a court administrator notes in the register that *a judgment document* has been filed with the court administrator."

(Emphasis added.)

In short, under the preexisting statutory scheme, to be enforceable and appealable, a judgment had to be in writing, plainly labeled as a "judgment," and entered in the register with a notation that a "judgment" had been filed. Under the new statutory scheme, to be enforceable and appealable, a judgment has to be in writing, plainly labeled as a "judgment," and entered in the register with a notation that a "judgment" has been filed.

If the legislature had done nothing more, other than change, reorganize, or clarify other aspects of the preexisting scheme, the appealability of this judgment would not be in question. It would be a simple matter to presume, as we usually do, that the legislature was aware of former requirements and to conclude that, by keeping them, the legislature intended no change. *See, e.g., U.S. National Bank v. Heggemeier*, 106 Or App 693, 699, 810 P2d 396 (1991) (given legislature's presumed knowledge of earlier enactments and case law, and its failure to expressly change the law, court assumed that legislature intended not to change the law).

But drawing that conclusion here is not such a simple matter. With the new statutory scheme, the legislature parted company with past practice by devising a more formal and seemingly intricate scheme of judgment subcategories or

"types." Judgments in many cases now fall into one of three types: limited, general, or supplemental. Those designations distinguish judgments based on, among other things, their timing and their legal effect on the rights and interests of the parties. For example, a limited judgment is rendered *before* a general judgment and "disposes of at least one but fewer than all claims in the action." ORS 18.005(13). A general judgment, in contrast, "decides all claims in the action" except those previously decided by a limited judgment or those that may be later decided by a supplement judgment. ORS 18.005(8). And a supplemental judgment is rendered *after* a general judgment, as authorized by law, and affects a substantial right of a party. ORS 18.005(15).

As a complement to those new categorizations, the statutory scheme also imposes newly created duties on court administrators and trial judges pertaining to the form of judgments and register notations regarding judgment documents. Specifically, in those cases in which a judgment must be either limited, general, or supplemental, the title of the judgment document "must indicate" which it is, ORS 18.038(2); the judge must "ensure" that the title so indicates, ORS 18.052(1); if the title does not so indicate, the court administrator must return the judgment document to the judge without noting its filing in the register, ORS 18.058(2); and, if the title properly indicates the judgment type, the court administrator must note in the register whether the judgment is limited, general, or supplemental, ORS 18.075(2)(b).

The existence of those new requirements and duties, and the legislative history emphasizing their importance, leads the dissent to conclude:

> "[T]he legislative history confirms that the legislature created subcategories of judgments, each of which has particular legal consequences. The legislature also expanded the labeling requirement under preexisting law to require that, generally, the judgment document be properly labeled so that those who need information about the judgment will be clearly informed of its nature. Further, the legislature intended that the labeling of a judgment document be a significant procedural requirement. Consequently and in order to effectuate those purposes and intentions, the text

and context of ORS 18.075(1) make clear that entry in the register, which serves as a public record and a tool of judicial administration, must accurately indicate the type of judgment that the trial court rendered as reflected in the judgment document that the court filed."

195 Or App at 635-36 (Brewer, J., dissenting). Thus, the dissent would hold that, "when the administrator does not accurately note in the register the label on the judgment document that the trial court filed, the judgment that the court rendered in the action has yet to be entered." *Id.* at 21. That conclusion, in turn, would dictate that the judgment is a nullity—that is, neither enforceable nor appealable. *See* ORS 18.082(1) (enforceability and appealability of a judgment depend on "entry").

With respect, the dissent focuses on the wrong question. The question is not whether the purpose of imposing new form and procedural duties pertaining to judgment types would be better effectuated if those duties are accurately performed. The answer to that is, axiomatically, yes. The question to ask, instead, is whether the legislature intended that judgments not be enforceable or appealable if those duties are not accurately performed. In this particular case, that question reduces to whether the legislature intended that effective "entry" in the register depend on a notation not only that a "judgment" document had been filed, but also on an accurate notation of the type of judgment rendered. The dissent's conclusion on the point is not clearly wrong. But neither is it clearly right. The statutory scheme, its context, and its legislative history equally—if not more strongly—support an opposite conclusion. The question thus narrows to this: as between two reasonable interpretations of the statutory scheme, one of which creates new statutory impediments to the appealability and enforceability of judgments, and the other of which does not, which did the legislature more likely intend? The answer is this: the one that creates fewer impediments to the appealability and enforceability of judgments.

The statutes themselves provide the strongest indication that the legislature did not intend to add to the former

requirements for the appealability and enforceability of judgments. As earlier described, the legislature retained all of the former requirements—that a judgment be in writing, be plainly labeled a "judgment," and be entered in the register with a notation of the filing of "a judgment." That much suggests that the legislature intended to retain those requirements, but not add to them, at least in the absence of some clear contrary indication. *See Far West Landscaping v. Modern Merchandising*, 287 Or 653, 660, 601 P2d 1237 (1979) (court would not infer that legal effect of judgment should be impaired by failure to perform administrative duties where legislature did not clearly so indicate); *U.S. National Bank*, 106 Or App at 699 (same).

The structure of the statutes reinforces that conclusion. ORS 18.075, which describes what must be noted in court records on filing of a judgment, consists of 11 subsections. Significantly, only the first of the 11 subsections describes what information must be noted in the register for "entry" of the judgments. It codifies exactly the former requirement that, to be "entered" in the register, the court administrator must note the filing of "a judgment" document in the register. *Compare former* ORCP 70 B *and Patrick*, 158 Or App at 185-86, *with* ORS 18.075(1). The very next subsection requires the court administrator to note in the register "[w]hether the judgment is a limited judgment, a general judgment or a supplemental judgment." ORS 18.075(2)(b). But, unlike the immediately preceding subsection, subsection (2) does not provide that noting the judgment's type is required for "entry." The fact that the legislature omitted any reference to entry in subsection (2) is textual support for the proposition that, however important it may be for the register also to reflect whether the judgment is limited, general, or supplemental, that further information is not legally necessary to accomplish entry. *See Emerald PUD v. PP&L*, 302 Or 256, 269, 729 P2d 552 (1986) (use of a term in one section and not in another section of the same statute indicates a purposeful omission).[6]

---

[6] The dissent's answer to this point is to assert that subsection (1) is silent about the "content" of the notation that must be made in the register and, instead, the content is set forth in the subsections that follow, including subsection (2). The dissent, in effect, reads the statute as though subsection (1) states that entry is

The statute that describes the form of a judgment document, ORS 18.038, similarly separates the title requirements retained from the preexisting law from the new ones. Again, the first subsection of the statute retains the former requirement that a judgment document be "plainly titled as a judgment." *Compare former* ORCP 70 A *and Carriage Inn*, 296 Or at 194, *with* ORS 18.038(1). Then, in a separate subsection using different language, the legislature also provided that the title must "indicate" whether the judgment is a limited judgment, a general judgment, or a supplemental judgment. ORS 18.038(2). If the legislature intended to expand the preexisting "plain title" requirement so that denominating a judgment as limited, general, or supplemental has the same importance as including the word "judgment" in the title, the logical—and easy—way to do that would be to place those requirements in the same subsection of the statute. But the legislature did not do so. The structure of the statute at least suggests, therefore, that the legislature did not intend the requirement to "indicate" the judgment *type* to be on a par with the requirement that the word "judgment" be in the document's title.

Finally, ORS 18.082(6) is also illuminating on the question of whether the legislature intended appealability and enforceability to depend on an accurate description of a judgment's type (*e.g.*, limited, general, or supplemental) in the judgment document's title *and* in the register notation. That provision declares that, if a judgment is entered in the register when its title does not indicate whether it is limited, general, or supplemental, it has the effect of a general judgment:

> "If a * * * judgment document is filed with the court administrator that does not indicate whether the judgment is a limited, general or supplemental judgment, and the court administrator fails to comply with ORS 18.058

achieved when a notation *of the following* is made in the register, and then sets out the content requirements *for entry* in the subsections that follow. That is neither the structure nor the text of the statute, however. Subsection (1) expressly declares *when* entry is achieved, but it says nothing about noting the type of judgment document filed. Subsection (2) expressly requires some indication of a judgment's type, but says nothing about that indication being a condition of entry. The dissent's effort to read subsection (2) as a qualification of *when* entry occurs under subsection (1) subtly rewrites the statute.

[requiring the court administrator not to note its filing in the register and instead to return it to the judge who filed it] and makes an entry in the register indicating that a judgment has been filed with the court administrator, the document has the effect of a general judgment entered in circuit court."

ORS 18.082(6).

Implicit in that provision is the legislature's recognition that judges and court administrators might fail to carry out their new statutory obligations to indicate, both in a judgment document's title and in the register, the particular type of judgment involved. The legislature did not, however, provide that nonperformance of those duties rendered a judgment unenforceable or unappealable. To the contrary, the legislature expressly gave such judgments force, by declaring that they have the effect of a general judgment entered in the circuit court. To be sure, that provision anticipates only one of many problems that can arise under the new scheme governing judgments. The legislature did not address, for example, what would happen if the judgment document's title indicates that it is limited, general, or supplemental but the notation in the register does not. Nor did the legislature address the consequences of a notation in the register that does not match the title, as occurred in this case. But ORS 18.082(6) necessarily confirms one proposition: failure to note the type of judgment document (*e.g.*, limited, general, or supplemental) in the register and in the title of the judgment document does not prevent an effective "entry" of a judgment in the register and, thus, preclude enforcement and appealability of the judgment.[7]

---

[7] The dissent, drawing from legislative history, observes that ORS 18.082(6) was included in HB 2646 because of legislative uncertainty as to whether the Judicial Department's computer systems would reject any notation that does not designate the judgment type in the register. 195 Or App at 633-34 (Brewer, J., dissenting). That legislative history confirms that the legislature wanted judgments to be enforceable and appealable even if a notation of a judgment's type was not made in the register. The fact that the legislature contemplated technological rather than human obstacles to making that notation does not alter the reality that the legislature did not intend the omission of that information, whatever the reason for the omission, to impede enforceabilty and appealability of judgments.

To the extent that it is necessary to resort to legislative history, the history provides limited help. The commentary to ORS 18.038(1), which requires a judgment document to be "plainly titled as a judgment," explicitly states that the intent of that provision was to retain the requirement that had been "in the law for many years" that "a judgment be designated a judgment." Judgments/Enforcement of Judgments: Judgments Report (HB 2646), Oregon Law Commission, Feb 6, 2003, 12 (Judgments Report).[8] Moreover, it declares the significance of so titling a judgment to be the same "as under existing law." *Id.* As already described, the then-existing law was that a judgment document had to have the word "judgment" in its title. The title could otherwise be misleading or wrong without impairing the judgment's appealability and enforceability as long as that one titling requirement was satisfied.[9]

In contrast, the commentary to ORS 18.038(2), which requires that the title also "indicate" that a judgment document is limited, general, or supplemental if those judgment types apply, says nothing similar. *See* Judgments Report at 12. That is, nothing in the Judgments Report suggests that the requirement was to have any bearing on the appealability and enforceability of the judgment. At most, the Judgments Report emphasizes the importance of the requirement (*i.e.*, it is "probably the single most significant change in judgment procedure made by the bill") and the desirability of compliance (*i.e.*, "*Every judgment must comply*

---

[8] HB 2646 was sponsored by Representatives Lane Shetterly and Max Williams at the request of the Oregon Law Commission (OLC), which was "established to conduct a continuous substantive law revision program." ORS 173.315(1); *see also* ORS 173.315 - 173.357 (the enabling legislation for the OLC). The OLC's Judgments Report was submitted as an exhibit during the legislative hearings concerning HB 2646, and thus provides us with an extensive "record" of the purposes and intentions behind the new bill, albeit a record that proves to be of limited help in this instance.

[9] Of course, a judgment still had to be, in substance, a judgment. *See generally Brennan v. La Tourelle Apartments*, 184 Or App 235, 241, 56 P3d 423 (2002) (stating general rule that, to be appealable, judgment must substantively resolve all claims as to all parties or reflect trial court's express decision, consistently with ORCP 67 B (2001), *amended by* Or Laws 2004, ch 576, § 90, to resolve fewer than all claims). But the issue in this case concerns only the procedures for entry, not the substantive recitals in the judgment document.

*with this requirement.*"). Judgments Report at 12 (emphasis in original).[10] But the Judgments Report is silent on whether including the judgment's *type* in its title is a new condition precedent of a judgment's appealability and enforceability. That silence is telling, at least where, nearly simultaneously, the Judgments Report takes pains to note the jurisdictional significance of plainly titling a judgment document as a "judgment." *See id.*

The few statements in the Judgments Report pertaining to entry of judgments in the register likewise suggest that the legislature did not intend to create new hurdles for the enforceability and appealability of judgments. Rather, the declared objective was to *reduce* those hurdles:

"Subsection (1) makes general statements about the effect of entry of a judgment. The most important of these statements is that upon entry, a judgment can be appealed and enforced. This provision is consistent with one of the Work Group's fundamental decisions: *There should never be 'judgments' that are entered in the register but that are not appealable and enforceable.* This does not mean that an appellate court must entertain an appeal from anything that has been labeled as a judgment and entered in the register. For instance, if a malicious party labeled a grocery list as a general judgment, an oblivious judge signed the document, and the clerk entered it in the register, the appellate court is not somehow compelled to entertain an appeal from a non-decision by the court."

*Id.* at 14 (original emphasis and footnotes omitted; other emphasis added). Beyond that, the Judgments Report is unenlightening in explaining what entry requires. It merely paraphrases ORS 18.075(1) by noting that " '[e]ntry' means that the court administrator has noted in the register that a judgment document has been filed with the court administrator." *Id.* The Judgments Report does not even acknowledge the further provisions of ORS 18.075(2), which require the court administrator to note in the register whether the judgment is limited, general, or supplemental, but which do not describe that requirement as an aspect of entry.

---

[10] Despite that history, the fact remains, as already discussed, that *not* every judgment must comply with the requirement that the title indicate whether a judgment is limited, general, and supplemental. *See* ORS 18.082(6).

In the end, the legislative history reveals more by what it does not discuss than by what it does. Nothing in the Judgments Report suggests that the legislature intended to create new requirements of form or procedure as conditions of enforceability and appealability of judgments. It is difficult to conceive that the legislature would have intended to do so without commenting explicitly on that objective. No such comments exist. Instead, the few threads of pertinent legislative history reflect only the legislature's intent to retain the preexisting requirements.

The dissent apparently is concerned that, if the new duties for indicating *type* of judgment in the register (and, perhaps, also in the title of the document) are not an aspect of entry, those new duties will go unenforced. But that approach threatens to throw the proverbial baby out with the bath water. Traditionally, appealability and enforceability of judgments have depended on compliance with only a few requirements of form and procedure. Not all administrative tasks to be performed in connection with judgments—even highly important and mandatory ones—frustrate the enforceability or appealability of judgments if not performed or if performed imperfectly. *See, e.g., U.S. National Bank*, 106 Or App at 698-99 (court administrator's failure to give parties statutorily required notice of entry of a judgment does not render the judgment unappealable or otherwise defeat the appellate court's jurisdiction).

The same conclusion makes sense for information regarding the *type* of judgment rendered. In terms of a judgment's enforceability and appealability, nothing turns on the type of judgment rendered. All three judgment types are appealable. *See* ORS 19.205(1) ("Unless otherwise provided by law, a limited judgment, general judgment or supplemental judgment, as those terms are defined by ORS 18.005, may be appealed as provided in this chapter."). The procedures for taking an appeal—*i.e.*, what must be filed and when it must be filed—are the same regardless of whether a judgment is limited, general, or supplemental. *See generally* ORS ch 19. On entry, all three judgment types may be enforced "in the manner provided by law." ORS 18.082(1). Thus, whatever other purposes may be served by a notation in the register of the particular type of judgment filed, that notation is not

what places a party on notice that an appealable versus non-appealable event has transpired. *See generally Patrick*, 158 Or App at 186 (notation in the register that a filed document is a "judgment" as opposed to an "order" has implications beyond considerations of reliability and accuracy because appeal rights run from judgments). Nor does that notation alter the steps that a party must take or the time available to pursue an appeal.[11]

Thus, we hold that a judgment is entered in the register, within the meaning of the pertinent statutes, when the court administrator notes the filing of a "judgment" document. In this case, then, the fact that the judgment document was further described in the register as a limited rather than a general judgment was a clerical error. It was not, however, a clerical error that renders the judgment a nullity—that is, unenforceable and unappealable.

That is not to conclude, however, that the error in this case or similar ones likely to arise under the new statutory scheme should go uncorrected. That may depend on what harm will flow from the error. It is not obvious in this particular case that the notation of this judgment in the register as a limited rather than a general one will significantly prejudice the rights of the parties or, more generally, mislead the public. But to the extent it will do either, in this case or in others, the notation can and should be corrected. ORCP 71 A permits a court to correct clerical mistakes in the record, which includes the register,[12] at any time on its own motion or on the motion of any party.[13] Nothing prevents us from

---

[11] The dissent places significance on accurately informing the public—not just the parties—of the judgment document filed through a correct notation of judgment type in the register. *See* 195 Or App at 634 (Brewer, J., dissenting). But, as is true for the parties to a case, little seems to turn on that information. The members of the public primarily concerned with the existence of a judgment document may be title companies and financial institutions whose credit decisions are influenced by the liabilities and liens created by money awards. For those purposes, nothing depends on whether a judgment creating a monetary liability is limited, general, or supplemental. Far more important to such entities is whether the judgment is enforceable. Under the dissent's approach, an inaccurate notation of judgment type in the register would render a judgment unenforceable, which would stand a much greater potential to mislead the public than the mistaken notation itself.

[12] *See* ORS 7.010(1) (the records of the circuit court include a register).

[13] The pendency of an appeal does not alter the trial court's authority to correct notations in the register. Because such a correction is to the register, not the

alerting either the trial court or the parties, or both, to a mistaken register notation of judgment type so that it can be corrected. Indeed, we arguably have inherent authority to direct a trial court to make such a correction. *See Gillespie v. Kononen*, 310 Or 272, 277-78, 797 P2d 361 (1990) (reserving issue of whether Court of Appeals has inherent supervisory authority over trial judges in matters pertaining to the entry of judgments).[14]

Our analysis potentially leads to nearly the same place as the dissent's: a correction of the register, so that it accurately reflects the type of judgment document that the trial court signed and filed with the court administrator. But our different conclusions as to whether the error prevented "entry" of the judgment has far different consequences where the same or related errors are made but never caught, either because a judgment was not appealed or, if appealed, the error was not noticed.[15] "Entry" of a judgment in the register is the procedural step required for it to be enforceable as well as appealable. Consequently, if a judgment has not been entered in the register in a procedurally effective way, the judgment does not become "the exclusive statement of the court's decision in the case" that "governs the rights and obligations of the parties," *see* ORS 18.082(1)(a); the judgment may not be enforced in the manner provided by law, *see* ORS 18.082(1)(b); the judgment does not act as the official notice of the court's decision, *see* ORS 18.082(1)(d); and the judgment can be set aside by courts other than the court rendering the judgment or a higher court, *see* ORS 18.082(1)(e). Were the dissent's analysis correct, mistakes like this one and similar ones in titles and in register notations that go undiscovered

judgment itself, the further procedures pertaining to the court's authority when an appeal is pending do not come into play. *See* ORCP 71 A ("During the pendency of an appeal, *a judgment* may be corrected as provided in subsection (2) of section B of this rule." (Emphasis added.)).

[14] Other statutes provide additional procedural means to correct errors that predictably will arise under the new judgments scheme. *See* ORS 18.112(1) (authorizing trial court to change the designation of a general judgment to a limited one).

[15] Literally hundreds of thousands of cases are filed in the circuit courts that do not result in appeals. In 2001, for example, 654,822 cases were filed in the circuit courts. That same year, only 4,297 appeals were filed with this court. *Oregon Blue Book* 100 (2003-2004).

until years after the fact would render those judgments a nullity in the interim, with all the ensuing chaos and uncertainty that will follow their late discovery.

That outcome is not compelled by the text or context of the new statutory scheme governing judgments. Nor is it what the legislature intended. We therefore conclude that the judgment in this case was entered in the register for purposes of ORS 18.082 and is appealable.

Jurisdiction determined; appeal may proceed.

**BREWER, J.,** dissenting.

In 2003, the legislature enacted House Bill (HB) 2646, which effected a comprehensive revision of the laws governing judgments. *See* Or Laws 2003, ch 576 (containing the complete text of HB 2646). The legislature intended to eliminate perceived problems with existing law, including the lack of clarity as to what was an appealable judgment and judgments that were labeled as such but did not have the effect of judgments.[1] In short, HB 2646 reflected a sea change in the law governing judgments.

The legislature appears to have accomplished that sea change by enacting an intricate statutory scheme that expressly imposes duties on, among others, courts and court administrators. An important part of that statutory scheme

---

[1] The Oregon Law Commission's (OLC) report describes several problems that the bill was designed to address, including:

"C. Lack of clarity on what is an 'appealable' judgment. An embarrassingly large number of appellate cases have been generated over the years by confusion relating to the appealability of decisions rendered by a court. To some degree, these cases arise because of lack of clear statutory guidelines for the form of judgments. More significantly, the existing laws fail to make an unequivocal statement as to what a 'judgment' is.

"D. Judgments labeled as judgments that are not really judgments. The existing law allows documents to be filed with the court that are denominated 'judgments,' but do not operate as judgments. Confusion can easily arise as to the effect of these documents. The Work Group suspected that many such documents are docketed by the court administrator and create liens, even though the document does not become enforceable until entry of the general judgment in the case."

Judgments/Enforcement of Judgments: Judgments Report (HB 2646), Oregon Law Commission, Feb 6, 2003, 5 (Judgments Report) (underscoring in original).

is ORS 18.005, a set of definitions of terms relating to judgments. The definitions are quite specific and are interrelated—that is, the definition of one term may include other terms that are themselves specifically defined. The specificity of the definitions is emblematic of the specificity of the duties that the new statutory scheme imposes with regard to, among other things, the creation and entry of judgments. Of significance and as pertinent in this case, the legislature created three subcategories of judgments—limited, general, and supplemental judgments—and defined each type of judgment in ORS 18.005.[2] In separate statutes, the legislature created and described a fourth subcategory of judgments, corrected judgments.[3]

My understanding is that the legislature intended that greater specificity in the statutes would result in greater clarity for the bench and bar with regard to the law of judgments. In other words, if everyone involved complies with the statutory requirements and duties, there will fewer problems. As this case illustrates, however, mistakes will be made in complying with the new requirements. For that reason, this case, in broad terms, concerns the consequences for failing to comply with the requirements of the new statutory scheme.

The facts are undisputed. In March 2004, the trial court rendered its judgment. The judgment document is entitled "GENERAL JUDGMENT."[4] The judgment contained a money award.[5] When the court administrator noted in the register that a judgment document had been filed, however, the administrator made the following notation in the register: "Judgment Limited Creates Lien." The terms "limited judgment" and "general judgment" have different meanings.[6]

---

[2] *See* ORS 18.005(8) (defining general judgment); ORS 18.005(13) (defining limited judgment); ORS 18.005(15) (defining supplemental judgment).

[3] *See* ORS 18.107 (concerning corrected judgments); ORS 18.112 (same).

[4] *See* ORS 18.005(10) (defining judgment document).

[5] A money award is "a judgment or portion of a judgment that requires the payment of money." ORS 18.005(14). Generally, if a judgment document that is filed with a court administrator contains a money award and complies with certain statutory requirements, "the court administrator shall note in the register of a circuit court that the judgment creates a judgment lien * * *[.]" ORS 18.150(1).

[6] A "limited judgment" is

As I explain in detail below, I conclude that, because the administrator's notation was incorrect, the general judgment rendered by the trial court, as reflected in the judgment document that it filed in this action, has not been entered in the register. Consequently, I would hold that, even though the trial court intended to enter an appealable judgment, the trial court has not yet done so. For that reason, I would grant the trial court leave to direct the court administrator to enter a general judgment in the register.

Before turning to the majority's analysis, I begin by focusing on the proper interpretation of the pertinent statutes. Under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), I first examine a statute's text and context. Context includes other provisions of the same statute and related statutes. *Id.* at 611. Context also includes "the preexisting common law and the statutory framework within which the law was enacted." *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998); *see also Weber and Weber*, 337 Or 55, 67-68, 91 P3d 706 (2004) (reasoning that an appellate court "presumes that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing upon those statutes").

I begin by discussing the preexisting common law concerning the entry of a judgment. As pertinent to this case, the law before HB 2646 was enacted established that a judgment must be entered as such in the register. In *Patrick v.*

---

"a judgment rendered before entry of a general judgment in an action that disposes of at least one but fewer than all claims in the action and that is rendered pursuant to a statute or other source of law that specifically authorizes disposition of fewer than all claims in the action. 'Limited judgment' includes:

"(a) A judgment entered under ORCP 67 B or 67 G;

"(b) A judgment entered before the conclusion of an action in a circuit court for the partition of real property, defining the rights of the parties to the action and directing sale or partition; and

"(c) An interlocutory judgment foreclosing an interest in real property."

ORS 18.005(13). In contrast to the definition of "limited judgment," a "general judgment" is

"the judgment entered by a court that decides all claims in the action except:

"(a) A claim previously decided by a limited judgment; and

"(b) A claim that may be decided by a supplemental judgment."

ORS 18.005(8).

*Otteman,* 158 Or App 175, 974 P2d 217, *rev den,* 328 Or 594 (1999), this court addressed whether a judgment was effective even though the clerk incorrectly noted in the register that it was an order. Specifically, the court framed the issue as whether the clerk's notation was "sufficient if a judgment has, in fact, been filed and the register accurately reflects the *event*—the filing—albeit not the *title* of the document." *Id.* at 185 (emphasis in original). This court held that "the legal/jurisdictional reality is that a judgment is not effective until entered in the register" and that the clerk's mistake does not alter the legal reality that the judgment had not been entered. *Id.* at 187. The court's reasoning focused on the wording of *former* ORCP 70 and on the wording of ORS 7.020, the statute describing the content of the register.[7]

*Former* ORCP 70 B(2) provided that, "[n]otwithstanding ORS 3.070 or any other rule or statute, for purposes of these rules, a judgment is effective only when entered in the register as provided in this rule." This court agreed with the defendant's argument that, "because the clerk entered an 'order of dismissal,' rather than a 'judgment of dismissal,' in the register, judgment was not entered." *Patrick,* 158 Or App at 184. This court concluded that *former* ORCP 70 B(1) required "the clerk to enter 'notation of *the* filing,' not '*a* filing'—and the referent for 'the' is, most plausibly, the particular document that was, in fact, filed." *Id.* at 185 (quoting *former* ORCP 70 B(1)) (emphasis in *Patrick*).

This court reasoned that related statutes supported that interpretation. In particular, the court referred to ORS 7.020, which provides:

---

[7] Even though the legislature repealed *former* ORCP 70 (2001) in HB 2646, *see* Or Laws 2003, ch 576, § 580, the legislature codified many of the requirements of that rule in various statutes in ORS chapter 18. *Compare former* ORCP 70, *with* ORS 18.005(9) (providing, in part, that a judgment must be reflected in a judgment document); ORS 18.005(10) (defining a judgment document, in part, as a writing); ORS 18.038 (governing the form of a judgment document and, among other things, requiring that the judgment document be plainly titled as a judgment, be separate from any other document in the action, include the name of the court rendering the judgment and the file number, include the names of any parties in whose favor it is given and against whom it is given, and include the signature of the judge or, if appropriate, the court administrator); ORS 18.042 (concerning money awards in civil actions); ORS 18.075 (concerning entry of judgments); ORS 18.078 (concerning notice of entry of judgments); ORS 18.082 (concerning the effect of entry of a judgment).

> "The register is a record wherein the clerk or court administrator shall enter, by its title, every action, suit or proceeding commenced in, or transferred or appealed to, the court, according to the date of its commencement, transfer or appeal. Thereafter, the clerk or court administrator shall note therein all the following:
>
> "(1) The date of any filing of any paper or process.
>
> "(2) The date of making, filing and entry of any order, judgment, ruling or other direction of the court in or concerning such action, suit or proceeding.
>
> "(3) Any other information required by statute, court order or rule."

Based on the wording of the statute, the court reasoned that, even though ORS 7.020(2)

> "does not explicitly require that the clerk accurately describe each 'order, judgment [or] ruling,' that requirement is implicit in the statute's purpose and function. That is, for the register to be meaningful and useful, both as a public record and as a tool of judicial administration, it must accurately describe *what* is filed and not merely *when* it is filed. By extension, 'notation of the filing' in ORCP 70 B(1) encompasses the former as well as the latter."

*Patrick*, 158 Or App at 185-86 (emphasis and bracketed material in original). In short, this court held that a judgment must be entered as a judgment in the register.

With that principle in mind, I turn to ORS 18.082, a new statute that governs the effect of entry of a judgment, which provides, in part:

> "(1) *Upon entry* of a judgment, the judgment:
>
> "(a) Becomes the exclusive statement of the court's decision in the case and governs the rights and obligations of the parties that are subject to the judgment;
>
> "(b) May be enforced in the manner provided by law;
>
> "(c) May be appealed in the manner provided by law;
>
> "(d) Acts as official notice of the court's decision; and
>
> "(e) May be set aside or modified only by the court rendering the judgment or by another court or tribunal with

the same or greater authority than the court rendering the judgment."

(Emphasis added.) The legislature's intent is clear from the text of that statute: Entry is a prerequisite to the appeal of a judgment. That conclusion is confirmed by ORS 19.205 and ORS 19.255, two statutes governing the appeal of judgments. ORS 19.205(1), as relevant to this case, provides that a general judgment, "as [that] term [is] defined by ORS 18.005, may be appealed as provided in this chapter." In turn, ORS 19.255(1) provides that, generally, "a notice of appeal must be served and filed within 30 days after the judgment appealed from *is entered in the register*." (Emphasis added.)

Consequently, because entry is a prerequisite to the appeal of a judgment, the issue in this case narrows to whether the judgment that the court rendered in the action, as reflected in the judgment document, was entered in the register. If it was, the judgment may be appealed. ORS 18.082(1)(c). If it was not, the judgment may not be appealed. *Id.*

Resolution of that issue requires the interpretation of ORS 18.075, the statute governing the entry of judgments in the register, which provides, in part:

"(1)  A judgment is entered in circuit court when a court administrator notes in the register that a judgment document has been filed with the court administrator.

"(2)  Subject to ORS 18.058(2), when a judge files a judgment document with the court administrator, the court administrator shall note in the register:

"(a)  That the judgment document has been filed and the day, hour and minute that the judgment is entered.

"(b)  Whether the judgment is a limited judgment, a general judgment or a supplemental judgment.

"(c)  Whether the judgment includes a money award.

"(d)  Whether the judgment creates a judgment lien under ORS 18.150."

Subsection (1) refers to the terms "judgment" and "judgment document." Those are terms of art that the legislature has specifically defined. A "judgment" is "the concluding decision of a court on one or more claims in one or more actions, as reflected in a judgment document." ORS 18.005(9). Regardless of the type of judgment that the trial court renders (*e.g.*, limited, general, supplemental), it must be reflected in a "judgment document," which is defined as "a writing in the form provided by ORS 18.038 that incorporates a court's judgment." ORS 18.005(10). In turn, ORS 18.038 imposes particular requirements concerning the form of a judgment document. At issue is whether the references in ORS 18.075(1) to judgment and judgment document mean (1) any judgment or judgment document or (2) the judgment that the trial court rendered in the action as reflected in the judgment document that the trial court filed with the administrator. With that issue in mind, I turn to an examination of the text and context of that statute.

An ordinary meaning of "a" is:

"[A] function word before most singular nouns other than proper and mass nouns when the individual in question is undetermined, unidentified, or unspecified, esp. when the individual is being first mentioned or called to notice ‹there was *a* tree in the field› ‹*a* man walked past him› ‹he bought *a* house, but this is not the house he bought›[.]"

*Webster's Third New Int'l Dictionary* 1 (unabridged ed 1993) (emphasis in original). At first blush, the legislature's use of the indefinite article "a" in ORS 18.075(1) could mean that the administrator's notation that *any* judgment document has been filed is sufficient to constitute entry of a judgment. In other words, and as pertinent to this case, the administrator's notation that the judgment document was entitled "limited judgment" would be sufficient because the clerk noted that a judgment document had been filed.

A closer analysis of the text of ORS 18.075(1) in context, however, makes clear that the trial court administrator must note in the register the judgment document that the trial court filed in the action. As I have already described, a court's judgment in an action must be reflected in a judgment document, which is defined as "a writing in the form provided

by ORS 18.038 that incorporates a court's judgment." ORS 18.005(10). In turn, ORS 18.038 imposes several requirements, including that a judgment document "be plainly titled as a judgment." ORS 18.038(1). Additionally, ORS 18.038(2) provides:

> "The title of a judgment document must indicate whether the judgment is a limited judgment, a general judgment or a supplemental judgment. This subsection does not apply to:
>
> "(a)  Justice courts, municipal courts and county courts performing judicial functions.
>
> "(b)  Judgments in criminal actions.
>
> "(c)  Judgments in juvenile proceedings under ORS chapters 419B and 419C."

Further, the legislature has imposed a duty on the trial court judge to ensure that the title of the judgment document reflects the type of judgment that he or she rendered and a duty on the trial court administrator *not* to note that a judgment document has been filed if it (1) fails to indicate the type of judgment that the trial court rendered and (2) is not exempt from that labeling requirement under ORS 18.038(2).[8] ORS 18.005, ORS 18.038, ORS 18.052, ORS 18.058, and ORS 18.075 clearly contemplate that a trial court will render a particular type of judgment in an action and that, unless the judgment is exempt under ORS 18.038(2), the title of the judgment document must identify the type of judgment that the court rendered.

---

[8] *See* ORS 18.052(1) (providing, in part, that, "[u]nless the judgment is exempt under ORS 18.038(2), the judge shall ensure that the title of the judgment document indicates whether the judgment is a limited judgment, general judgment or supplemental judgment"); ORS 18.075(2) (providing that, "[s]ubject to ORS 18.058(2), when a judge files a judgment document with the court administrator, the court administrator shall note in the register" several pieces of information); ORS 18.058(2) ("If the title of a document filed with the court administrator indicates that the document is a decree, or indicates that the document is a judgment but fails to indicate whether the judgment is a limited judgment, general judgment or supplemental judgment, the court administrator may not note in the register that a judgment document has been filed, and shall return the document to the judge, unless the judgment is exempt under ORS 18.038(2)."); ORS 18.058(3) ("The court administrator may rely on a judgment document for entry of information in the register. The court administrator is not liable for entering any information in the register that reflects information contained in a judgment document, whether or not the information in the judgment is correct or properly presented.").

Additionally, as I have already indicated, a judgment is *"the* concluding decision of a court on one or more claims in one or more actions, as reflected in a judgment document." ORS 18.005(9) (emphasis added). "A judge rendering a judgment shall file with the court administrator a judgment document that incorporates *the* judgment." ORS 18.052(1) (emphasis added). In other words, the legislature has imposed a duty on the trial court judge to file with the administrator a judgment document that reflects the particular judgment that he or she rendered in the action. *See Anderson v. Jensen Racing, Inc.*, 324 Or 570, 578-79, 931 P2d 763 (1997) (the definite article "the" functions as an adjective that denotes a particular, specified thing). In turn, the administrator's duties are prescribed, in part, by ORS 18.075(2), which provides:

> "Subject to ORS 18.058(2), when a judge files a judgment document with the court administrator, the court administrator shall note in the register:
>
> "(a)   That the judgment document has been filed and the day, hour and minute that the judgment is entered.
>
> "(b)   *Whether the judgment is a limited judgment, a general judgment or a supplemental judgment.*
>
> "(c)   Whether the judgment includes a money award.
>
> "(d)   Whether the judgment creates a judgment lien under ORS 18.150."

(Emphasis added.) By its plain terms, that statute requires the court administrator to note in the register *the* judgment document that the trial court filed in the action and the type of judgment that the trial court rendered.[9]

---

[9] Oregon Laws 2003, chapter 576, section 9a, provides:

"Notwithstanding any other provision of sections 1 to 44 of this 2003 Act or any other law, a court administrator need not make any entry in the register or in the separate record maintained under section 9 of this 2003 Act that is different from the entries made by the court administrator before the effective date of this 2003 Act until such time as funding is available to make such modifications as may be necessary to accommodate those entries in the computer systems utilized by the circuit courts."

That section clearly was intended to address the circumstance of a computer system that, due to lack of funding, could not be modified to accommodate entries reflecting the new subcategories of judgments created by the legislature. Section 9a does not reflect a general intent that *incorrect notations in the register are*

Moreover, the statutes define a judgment to be the court's concluding decision on one or more claims in one or more actions as reflected in the judgment document. *See* ORS 18.005(9) (defining judgment); ORS 18.005(10) (defining judgment document). In other words, whatever the trial court's concluding decision is in the abstract, it is the judgment document, the writing in a particular form, that announces that decision to the world. On entry, the judgment "[b]ecomes the exclusive statement of the court's decision and governs the rights and obligations of the parties that are subject to the judgment[.]" ORS 18.082(1)(a). Thus, a notation that does not accurately reflect the title of the judgment document logically could not result in the entry of the judgment that was rendered by the trial court, because, on entry, the judgment must be the exclusive statement of the trial court's decision. After reviewing the statutory scheme in chapter 18 as a whole, it is clear that a purpose of judgment entry is to give notice to the public that a particular legally significant event has occurred. *See* ORS 18.082(1)(d) (providing that, *on entry*, the judgment "[a]cts as official notice of the court's decision"). Chapter 18 also makes clear that a primary purpose of the legislation was to enact a significant normative change— that is, to systematically implant in the law of judgments the useful categorization of judgments by type, with each type connoting a particularized meaning and set of legal consequences. Why, then, would the legislature intend for a notation in the register that erroneously described the pertinent judgment type to actuate the underlying judgment itself? That question raises no mere detail; it goes to the very heart of the legislation. It makes no discernable contextual sense to conclude that the legislature intended for a notation in the register that does not correctly describe a judgment to trigger the judgment's status as the *exclusive* statement of the court's decision.

For all of those reasons, the references in ORS 18.075(1) to judgment and judgment document are to the

---

acceptable. In this case, there is no indication in the record that the court administrator's incorrect notation was the result of the inability of the computer system to accommodate an appropriate entry. On the contrary, it appears that the court administrator had the capacity to make entries noting the subcategories of judgments because the administrator was able to note that a limited judgment had been rendered.

judgment that the trial court rendered, as reflected in the title of the judgment document that the trial court filed. Accordingly, I conclude the administrator must note in the register the judgment document that the trial court filed in the action.

Because the meaning of the statute is clear from the text and context it is unnecessary to consider legislative history and maxims of constructions. *See PGE*, 317 Or at 611-12 (reasoning that, if the legislature's intent is not clear from the text and context of the pertinent statute, the court will consider legislative history; if thereafter the legislature's intent remains unclear, the court may resort to general maxims of statutory construction to resolve the uncertainty). Nevertheless, I choose to discuss the legislative history because it supports my interpretation of the statute. *See State v. Sumerlin*, 139 Or App 579, 587 n 7, 913 P2d 340 (1996) (even though the court did not need to resort to legislative history, the court noted that the legislative history supported its conclusion). In that regard, I turn to the legislative history focusing on two related issues. First, because the administrator in this case noted that the trial court filed a document entitled "limited judgment" instead of noting that the court actually filed a document entitled "general judgment," I examine the legislative history to determine the significance that the legislature placed on the label of a judgment document. Second, and relatedly, I examine the legislative history to determine whether the legislature also intended that the label have significance in the entry of a judgment.

The legislative history demonstrates that proper labeling of a judgment document was one of the most important procedural changes effectuated by HB 2646. ORS 18.038(1) retains the labeling requirement from preexisting law by providing that "[a] judgment document must be plainly titled as a judgment." The OLC's report clearly indicates that that requirement, which was a jurisdictional requirement under the preexisting law, retained its significance under HB 2646:

"Subsection (1) [ORS 18.038(1)] would seem to be self-evident, and the requirement that a judgment be labeled as

a judgment has been in the law for many years. Nevertheless, the requirement continues to be a problem. Judges on occasion still sign documents designated 'judgment orders' or other variations on a simple judgment. *The requirement that a judgment be designated a judgment is as significant under the bill as under existing law.*"

Judgments/Enforcement of Judgments: Judgments Report (HB 2646), Oregon Law Commission, Feb 6, 2003, 12 (Judgments Report) (emphasis added).

The legislature, however, went further when it enacted HB 2646. Specifically, the legislature made the statutory scheme governing judgments more elaborate by creating subcategories of judgments and generally requiring that the title of a judgment document reflect the type of judgment that the court rendered. *See, e.g.*, ORS 18.005(8), (9), (10), (13), (15); ORS 18.038(2). ORS 18.038(2) provides, in part, that, unless exempted, "[t]he title of a judgment document must indicate whether the judgment is a limited judgment, a general judgment or a supplemental judgment." Again, the Judgments Report clearly indicates the significance of that labeling requirement:

"Subsection (2) [ORS 18.038(2), *see* 195 Or App at 626-27 (Brewer, J., dissenting),] contains what is probably the single most significant change in judgment procedure made by the bill. This subsection requires that every judgment document indicate whether the judgment is a limited judgment, a general judgment or a supplemental judgment. *Every judgment must comply with this requirement.* As will be seen in the comments on sections 8 and 13 of the bill, *the Work Group was very concerned about the consequences of this provision*, but felt that this additional requirement was necessary to ensure that the parties, the trial court and the appellate courts had clear direction with respect to whether a given judgment document was intended to be what is now commonly referred to as a 'final' judgment. If the judgment document is intended to end the case at the trial court level, the title must tell the court and all of the parties that a general judgment is intended. *If the judgment document will resolve less than all of the issues in the case, and the intent is that others will later be addressed in a subsequent judgment document, the title must indicate that the judgment is a limited judgment.* Any judgment entered after the entry of a

general judgment (other than a 'corrected judgment' under section 12 of the bill) must be designated as a supplemental judgment."

Judgments Report at 12 (underscoring in original; emphasis added).[10]

In particular, the legislative history concerning limited judgments exemplifies the importance that the legislature placed on the requirement that a judgment document indicate the type of judgment that the trial court rendered. ORS 18.052(1), the statute governing the duties of the trial court with regard to the form of the judgment document, provides, in part, that, "[i]f the judgment is a limited judgment rendered under the provisions of ORCP 67 B, the judge must determine that there is no just reason for delay, but the judgment document need not reflect that determination if the title of the judgment document indicates that the judgment is a limited judgment." According to the Judgments Report,

"The most significant provision in this section [ORS 18.052] is the last sentence of subsection (1). As can be seen, this sentence eliminates the requirement of ORCP 67 B that 'magic words' appear in the judgment document to acquire an appealable judgment. Instead, the judge is charged with making the required determination (no just reason for delay) and by the very act of signing a 'limited judgment' attests to having made that determination.

"This provision highlights one of the advantages of requiring that a judgment be labeled as a limited or general judgment. Judges are busy individuals, and they are required to sign numerous documents every day. Under ORCP 67 B, it is questionable whether all judges now look carefully at the language of every judgment document to see whether the judgment authorizes immediate appeal. With the strict division between limited and general judgments, and the requirement that each judgment be labeled as one of the three types of judgments, every judge should

---

[10] *See also* Tape Recording, House Judiciary Committee, HB 2646, Mar 25, 2003, Tape 103, Side A (statement of David Heynderickx, Senior Deputy Legislative Counsel); Tape Recording, Senate Judiciary Committee, HB 2646, June 18, 2003, Tape 168, Side A (statement of Representative and OLC Commissioner Max Williams).

be able to quickly determine what type of judgment is being requested."

Judgments Report at 13. Under the preexisting law, the failure to include the appropriate wording in an ORCP 67 B judgment was a defect that deprived this court of jurisdiction. Thus, in enacting HB 2646, the legislature replaced one requirement—a statement in the judgment document that there is no just reason for delay—with an equivalent requirement—the label "limited judgment"—that the legislature believed would be easier for practitioners to satisfy.

Interestingly, "[t]he [OLC] Work Group debated at length the manner of enforcing the requirement that a judgment be designated as either a limited, general or supplemental judgment." Judgments Report at 13. In that regard, the Judgments Report indicates that ORS 18.058(2) "prohibits the clerk from entering the judgment unless the judgment document reflects one of the three designations. The clerk is directed to return such judgment documents to the judge for insertion of the appropriate designation." *Id.* According to the Judgments Report, while that "procedure may result in delay in the entry of some judgments, the approach reflected in [ORS 18.058(2)] seemed to provide the most effective enforcement mechanism with the least possibility of giving rise to malpractice claims." *Id.* at 14.

Additionally, I understand that the OLC's Work Group had hoped that the computer system that the courts use could be programmed to reject any notation that did not designate the judgment as limited, general, or supplemental. Tape Recording, House Judiciary Committee, HB 2646, Apr 18, 2003, Tape 148, Side A (statement of David Heynderickx, Senior Deputy Legislative Counsel). Apparently, that was not possible. Written testimony before the House Judiciary Committee indicated that "[b]udgetary constraints prevent the court system from implementing changes in its computer system to prevent entry in the register of judgments that are not properly labeled as a limited, supplemental, or general judgment. Accordingly, a default provision has been added to the bill." Testimony, House Judiciary Committee, HB 2646, Apr 18, 2003, Ex B (additional comments concerning HB

2646 submitted by Randall Jordan, Assistant Attorney General and member of the OLC Work Group).

That default provision is 18.082(6), which provides:

> "If a document labeled as a decree is filed with the court administrator, or a judgment document is filed with the court administrator that does not indicate whether the judgment is a limited, general or supplemental judgment, and the court administrator fails to comply with ORS 18.058 and makes an entry in the register indicating that a judgment has been filed with court administrator, the document has the effect of a general judgment entered in circuit court."

ORS 18.082(6) does not reflect the legislature's intent that, generally, the notation in the register need not indicate the type of judgment that the trial court rendered. Instead, ORS 18.082(6) was intended to solve the problem of a judgment document that does not indicate the type of judgment that the trial court rendered and that is noted in the register as simply "judgment." Those circumstances are not present in this case. Moreover, to interpret ORS 18.082(6) as an expression of the legislature's intent that entry of a judgment is sufficient in all cases if the administrator makes the notation "judgment" in the register would eliminate, as a practical matter, a trial court's and a court administrator's statutory duties as well as the specific statutory requirements concerning the labeling of a judgment document.

To summarize, there is no indication that the legislature intended that the labeling requirements under HB 2646 were any less important than the labeling requirement under preexisting law—that is, that the judgment be plainly titled "judgment." Having created new subcategories of judgments, however, the legislature extended the labeling requirement under preexisting law. The legislature placed great significance on the requirement that a judgment document indicate the type of judgment that the trial court rendered. In fact, the labeling requirement ensures that the parties, the courts, and others who are interested have notice of the nature of the court's decision. Thus, it is clear that the legislature intended that, unless exempted by ORS 18.038(2), the type of judgment that the trial court renders

must be reflected in the title of the judgment document and that the legislature placed great significance on the labeling of a judgment document.

In light of the great significance that the legislature placed on the labeling requirements, I examine the legislative history to determine whether the legislature also intended that the label have significance in the entry of a judgment. According to the Judgments Report, ORS 18.082(1), which provides that entry of a judgment is a prerequisite to, among other things, the appeal of a judgment, "is consistent with one of the Work Group's fundamental decisions: There should never be 'judgments' that are entered in the register but that are not appealable and enforceable." Judgments Report at 14. Although it is clear that the legislature intended that judgments be appealable and enforceable *on entry*, there is little guidance in the legislative history concerning what constitutes entry under ORS 18.075.[11] Moreover, there is no indication that the legislature intended to overrule this court's decision in *Patrick*, in which the court had held that proper entry was essential to this court's jurisdiction and had reasoned that the register must accurately reflect what was filed in order for it to serve as a meaningful and useful public record and tool of judicial administration.

Accordingly, the legislative history confirms that the legislature created subcategories of judgments, each of which has particular legal consequences. The legislature also expanded the labeling requirement under preexisting law to require that, generally, the judgment document be properly labeled so that those who need information about the judgment will be clearly informed of its nature. Further, the legislature intended that the labeling of a judgment document be a significant procedural requirement. Consequently and

---

[11] With regard to ORS 18.075, the statute governing the requirements for the entry of judgments, the Judgments Report indicates that *former* ORCP 70 B was one source for the language in ORS 18.075 and states, in part:

"As already noted, subsection (1) of this section [ORS 18.075] establishes a uniform meaning for 'entry' of a judgment. 'Entry' means that the court administrator has noted in the register that a judgment document has been filed with the court administrator."

Judgments Report at 14. In other words, the legislative history indicates that entry means what the statute says that it means.

in order to effectuate those purposes and intentions, the text and context of ORS 18.075(1) make clear that entry in the register, which serves as a public record and a tool of judicial administration, must accurately indicate the type of judgment that the trial court rendered as reflected in the judgment document that the court filed.

In sum, the text and context of ORS 18.075(1) make clear, and the legislative history confirms, that the references to judgment and judgment document mean the judgment that the trial court rendered in the action as reflected in the judgment document that the trial court filed with the administrator. Thus, when the administrator does not accurately note in the register the label on the judgment document that the trial court filed, the judgment that the court rendered in the action has yet to be entered.

I recognize the consequences of my conclusion. One, attorneys would have the burden of ensuring not only that the judgments in their cases have been entered but also that the register accurately reflects the type of judgment that the court rendered. Although this would be a new burden, it is not a heavy one.[12] Two, when an administrator makes an incorrect notation in the register, entry would not have occurred and, under ORS 18.082(1), the judgment would not be enforceable and appealable. Such a consequence could be significant for a party that discovers that defect years after the judgment "purportedly" had been entered. That, however, has been the consequence of an improper entry since this court's decision in *Patrick*.

In this case, ORS 18.038(2) requires that the judgment document identify the type of judgment that the trial court rendered. The judgment document complied with that requirement, indicating that the trial court had rendered a

---

[12] Moreover, because an improper notation could prejudice a parties' rights to appeal, the burden would be an important one. For example, assume that a general judgment was properly entered and, thereafter but before the time for appealing the general judgment had expired, the parties obtained a supplemental judgment that the administrator incorrectly noted as a corrected general judgment in the register. In that case, the parties could believe that the time for filing a notice of appeal is governed by ORS 18.107(3) and might fail to appeal from the general judgment. Consequently, the parties might be unable to raise on appeal any issues concerning the general judgment.

general judgment. The administrator, however, did not note that the trial court had filed a judgment document entitled "general judgment." Instead, the administrator noted that the trial court had filed a judgment document entitled "limited judgment"—an event that, based on the record before us, never occurred. Thus, I conclude that the judgment rendered by the trial court has never been entered in the register, and, consequently, it is not yet appealable. *See* ORS 18.082(1) (providing that, on entry, the judgment "[m]ay be appealed in the manner provided by law").

The majority concludes otherwise and begins by broadly framing the issue in this case as whether the legislature intended that judgments not be enforceable or appealable if the new form and procedural duties pertaining to judgment types are not accurately performed. *See* 195 Or App at 610-11, 615-16. As I have already explained, however, the issue in this case is much more narrow—that is, whether the judgment in this case has been entered in the register in accordance with the new statutes governing entry. Resolution of that issue requires the interpretation of ORS 18.075(1). Further, if a judgment has not been entered, the legislature in ORS 18.082(1) has unambiguously expressed its intent that the judgment is not appealable and enforceable.

The majority then examines the preexisting law concerning the appealability and enforceability of judgments. According to the majority, ORS 18.075(1) "expressly identifies the substance of the notation necessary to enter a judgment in the register." 195 Or App at 609. I disagree with the majority's characterization of ORS 18.075(1) as a reflection of the legislature's exact replication of the requirement under the preexisting law that entry requires only that the word "judgment" appear in the notation in the register.

The problem with the majority's interpretation is that it inserts a provision into ORS 18.075(1) concerning the content of the notation.[13] As I have already indicated, ORS

---

[13] *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").

18.075(1) provides that "[a] judgment is entered in circuit court when a court administrator notes in the register that a judgment document has been filed with the court administrator." The text of that subsection does not provide that entry occurs if the word "judgment" appears in the notation. In fact, the text of that subsection does not address the content of the notation that the administrator must make. Instead, the legislature, in ORS 18.075(2), explicitly addressed the content of the notation providing that "the court administrator shall note in the register," among other things, "[w]hether the judgment is a limited judgment, a general judgment or a supplemental judgment." In sum, although ORS 18.075(1) defines entry to be a notation that a judgment document has been filed, it does not provide that entry occurs if the administrator makes the notation "judgment."

The majority asserts that, because the legislature provided when entry occurs in ORS 18.075(1) but provided for the content of the notation in ORS 18.075(2), the structure of the statute indicates that effective entry occurs without a notation of the type of judgment that the trial court rendered. According to the majority, I read

> "the statute as though subsection (1) states that entry is achieved when a notation *of the following* is made in the register, and then sets out the content requirements *for entry* in the subsections that follow. That is neither the structure nor the text of the statute, however. Subsection (1) expressly declares *when* entry is achieved, but it says nothing about noting the type of judgment document filed. Subsection (2) expressly requires some indication of a judgment's type, but says nothing about that indication being a condition of entry. The dissent's effort to read subsection (2) as a qualification of *when* entry occurs under subsection (1) subtly rewrites the statute."

195 Or App at 612-13 n 6 (emphasis in original).

The structure of the statute, however, clearly supports my position that subsection (2) describes the content of the notation in the register. Again, ORS 18.075 provides, in part:

"(1) A judgment is entered in circuit court when a court administrator *notes* in the register that a judgment document has been filed with the court administrator.

"(2) Subject to ORS 18.058(2), when a judge files a judgment document with the court administrator, the court administrator shall *note* in the register:

"(a) That the judgment document has been filed and the day, hour and minute that the judgment is entered.

"(b) Whether the judgment is a limited judgment, a general judgment or a supplemental judgment.

"(c) Whether the judgment includes a money award.

"(d) Whether the judgment creates a judgment lien under ORS 18.150."

(Emphasis added.) Based on the wording of the statute, the legislature has linked subsections (1) and (2) by providing in subsection (1) that a notation triggers the entry of a judgment and in subsection (2) that a notation must include certain information. Those two subsections must be read together. Thus, contrary to the majority's assertion, I have not conflated subsections (1) and (2).

Ultimately, the majority concludes:

"In short, under the preexisting statutory scheme, to be enforceable and appealable, a judgment had to be in writing, plainly labeled as a 'judgment,' and entered in the register with a notation that a 'judgment' had been filed. Under the new statutory scheme, to be enforceable and appealable, a judgment has to be in writing, plainly labeled as a 'judgment,' and entered in the register with a notation that a 'judgment' has been filed."

195 Or App at 609.

The problem with the majority's conclusion is that it fails to adequately consider the interrelationship between the pertinent definitions in ORS 18.005 and eliminates from ORS 18.038 specific requirements for the form of the judgment document that the legislature has expressly imposed. ORS 18.005(9) provides that a judgment is "the concluding decision of a court on one or more claims in one or more actions, *as reflected in a judgment document*." (Emphasis

added.) In turn, ORS 18.005(10) provides that a judgment document is "a writing *in the form provided by ORS 18.038* that incorporates a court's judgment." (Emphasis added.) In other words, a judgment must be reflected in a judgment document and a judgment document must comply with the requirements of ORS 18.038, which requires that the judgment document (1) be plainly titled as a judgment; (2) unless exempted, indicate whether the judgment is a limited judgment, general judgment, or supplemental judgment; (3) be separate from any other document in the action; (4) include the name of the court rendering the judgment and the file number; (5) include the names of any parties in whose favor it is given and against whom it is given; and (6) include the signature of the judge or, if appropriate, the court administrator and the date that the judgment document is signed. The majority's broad conclusion appears to flow from the requirements of the preexisting law for the appealability and enforceability of a judgment that were based on the statutes, rules, and case law that existed before HB 2646. In light of the new statutory scheme, I would not simply import the preexisting requirements, particularly where to do so is to eliminate the new statutory requirements imposed by the legislature in its definition of judgment and judgment document.

Further, as I have already discussed, the legislature clearly expanded the labeling requirement under preexisting law. The majority disagrees, asserting that,

"[i]f the legislature intended to expand the preexisting 'plain title' requirement so that denominating a judgment as limited, general, or supplemental has the same importance as including the word 'judgment' in the title, the logical—and easy—way to do that would be to place those requirements in the same subsection of the statute."

195 Or App at 613.

There may be another reason that the legislature structured ORS 18.038 as it did. I understand that the requirements of ORS 18.038 apply to civil and criminal judgments. *See* ORS 18.035(2) ("In criminal actions and juvenile proceedings under ORS chapters 419B and 419C, the judge shall ensure that a judgment document complying with ORS 18.038 and 18.048 is created and filed."). ORS 18.038(1)

requires that *all* judgment documents be plainly titled; however, ORS 18.038(2), consistently with the new statutory scheme, imposes a heightened labeling requirement for certain judgment documents—that is, those judgment documents that the legislature has not expressly exempted from the labeling requirement in subsection (2). Judgments in criminal actions and judgments in juvenile proceedings under ORS chapter 419B and 419C, among others, are exempt from the heightened labeling requirements. *See* ORS 18.038(2). For that reason, the structure of ORS 18.038 does not necessarily suggest that "the legislature did not intend the requirement to 'indicate' the judgment *type* to be on a par with the requirement that the word 'judgment' be in the document's title." 195 Or App at 613 (emphasis in original).

Finally, the majority reasons:

"Nothing in the Judgments Report suggests that the legislature intended to create new requirements of form or procedure as conditions of enforceability and appealability of judgments. It is difficult to conceive that the legislature would have intended to do so without commenting explicitly on that objective. No such comments exist. Instead, the few threads of pertinent legislative history reflect only the legislature's intent to retain the preexisting requirements."

195 Or App at 617. Any perceived lack of legislative history, however, should not be viewed to suggest that the legislature did not intend to effect a change in the preexisting law, particularly where the legislature enacted a new and specific statutory scheme governing the law of judgments.[14]

In sum, I understand the majority's ultimate position to be that the legislature retained only the requirements that a judgment be labeled "judgment" and that a notation including the word "judgment" is sufficient to constitute entry because the legislature would not have intended to create impediments to appealability and enforceability. Even

---

[14] *See SAIF v. Wart*, 192 Or App 505, 518 n 8, 87 P3d 1138, *rev den*, 337 Or 248 (2004) (stating that "the lack of legislative history on the issue of whether the legislature intended to overrule a Supreme Court decision cannot be viewed as evidence that the legislature did not intend to effect a change in the law, particularly where the legislature significantly amended the wording of the statute that the court had interpreted").

though that position appeals to the pragmatist in each of us, I cannot ignore the legislature's intentions as reflected in the specific requirements of the new statutory scheme that it enacted. The legislature would not enact a statutory scheme that clearly imposes new and significant normative changes in the law of judgments if it did not intend for there to be consequences for failure to comply with the new requirements. The specific consequences for failing to comply with a particular statutory requirement is determined by examining the legislation as a whole. The failure to comply with some statutory requirements may result in a judgment that is not appealable and enforceable, particularly in light of the specific definitions in ORS 18.005 and the interrelated statutory requirements for the creation, entry, and appealability of judgments. In this case, the failure in compliance concerned a normative change that went to the heart of HB 2646—that is, the categorization of judgments by type. In this case, it is important to emphasize that the legislature has determined the necessary requirements for entry, *see* ORS 18.075, and the consequences for failing to comply with those requirements—that is, if the judgment has not been entered, it is not appealable, *see* ORS 18.082.[15]

For all of the reasons that I have explained, I conclude that the references in ORS 18.075(1) to judgment and judgment document mean the judgment that the trial court rendered in the action as reflected in the judgment document that the trial court filed with the administrator. When, as in this case, the administrator does not accurately note in the

---

[15] The remaining issue for me would be the disposition of this appeal in light of that conclusion. ORS 19.270(4) provides:

"Notwithstanding the filing of a notice of appeal, the trial court has jurisdiction, with leave of the appellate court, to enter an appealable judgment if the appellate court determines that:

"(a) At the time of the filing of the notice of appeal the trial court intended to enter an appealable judgment; and

"(b) The judgment from which the appeal is taken is defective in form or was entered at a time when the trial court did not have jurisdiction of the cause under subsection (1) of this section, *or the trial court had not yet entered an appealable judgment.*"

(Emphasis added.) Because the trial court intended to enter an appealable judgment when plaintiff filed his notice of appeal but had not yet done so, I would grant the trial court leave under ORS 19.270(4) to direct the court administrator to enter the general judgment in the register.

register the label on the judgment document that the trial court filed, the judgment that the court rendered in the action has yet to be entered. Accordingly, I respectfully dissent.

Deits, C. J., Haselton and Wollheim, JJ., join in this dissent.